1
2
3
4
5
6
7          UNITED STATES DISTRICT COURT

8        NORTHERN DISTRICT OF CALIFORNIA

9

10   CLARK CHESTER,                          Case No. 22-cv-04460 BLF (PR)
              Plaintiff,
11                                            **ORDER GRANTING MOTION FOR**
       v.                                     **SUMMARY JUDGMENT**
12

13   I. PEREZ-PANTOJA,

14              Defendant.

15                                            (Docket No. 16)

16        Plaintiff, a state prisoner, filed the instant *pro se* civil rights complaint under 42

17   U.S.C. § 1983, against Sgt. I. Perez-Pantoja for unconstitutional acts against him at the

18   Correctional Training Facility ("CTF").  Dkt. No. 1.  The Honorable Magistrate Judge

19   Kandis A. Westmore found the complaint stated cognizable claims under the First and

20   Eighth Amendments and ordered the matter served on the sole Defendant.  Dkt. No. 14.

21   The matter was reassigned to this Court on December 27, 2022.  Dkt. No. 10.

22        Defendant Perez-Pantoja filed a motion for summary judgment on the grounds that

23   he is entitled to summary judgment on the merits, Plaintiff has failed to exhaust

24   administrative remedies with respect to some of the claims, and he is entitled to qualified

25   immunity.[1]  Dkt. No. 16.  Plaintiff did not file an opposition although given an opportunity

26

27   _____

     [1] In support of his motion, Defendant submits declarations from the following: Defendant
28   I. Perez-Pantoja ("Perez Decl.") with Ex. I (cell search property receipt), Dkt. No. 16-2; R.

United States District Court
Northern District of California

United States District Court
Northern District of California

to do so.  However, the complaint is verified and therefore may be treated as an opposing

affidavit.[2]  Dkt. No. 1 at 3.

For the reasons discussed below, Defendant's motion for summary judgment is

**GRANTED**.


**DISCUSSION**

**I.**     **Statement of Facts**[3]

At the time of the alleged events, Plaintiff was housed at CTF, specifically in

Building/Wing B.  Call Decl., Ex. J (Pl. Dep. at 11:6-8, 18:10-14); Dkt. No. 16-4 at 15, 22.

Defendant Perez-Pantoja was the correctional officer assigned to Building/Wing D.  Perez

Decl. ¶ 3.  In order to access the yard for recreation time, inmates have to exit their wings

into the corridor and walk down the corridor to the recreation yard at one end.  Perez Decl.

¶ 5, Dkt. No. 16-2 at 2; Pl. Dep. at 29:17-30:16, Dkt. No. 16-4 at 33-34.

When inmates are released from the housing units to access the yard, correctional

---

Monroy (Grievance Coordinator at CTF) with Exhibits G and H related to Plaintiff's
grievances, Dkt. No. 16-1; E. Galvan (Litigation Coordinator at CTF), Dkt. No. 16-3; and
Defendant's counsel, Deputy Attorney General Audra C. Call with a copy of Plaintiff's
deposition (Ex. J) and Exs. B thru E at the end, Dkt. No. 16-4.

[2] A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is
based on personal knowledge and sets forth specific facts admissible in evidence.  *See
Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's
verified complaint as opposing affidavit where, even though verification not in conformity
with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and
correct, and allegations were not based purely on his belief but on his personal
knowledge); *see also Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), amended,
135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified amended
complaint as opposing affidavit).
On the other hand, the exhibits attached to the complaint will not be considered as
they contain declarations and documents from other inmates which are not relevant to
Plaintiff's claims against Defendant.  Dkt. No. 1 at 14-54.  Whether or not Defendant
violated the rights of these other inmates has no tendency to make a fact more or less
probable with respect to Defendant's actions towards Plaintiff than it would without the
evidence nor is it of any consequence in determining this action.  *See* Fed. R. Evid. 401.

[3] The following facts are taken from Defendant's factual background and are undisputed
by Plaintiff who has not filed an opposition.  However, Plaintiff's version of events from
his complaint are also included where the accounts differ.

2

officers from each of the wings are required, and expected, to exit the housing units and stand in the corridor to provide security for inmates exiting the housing units.  Perez Decl. ¶¶ 4, 6, Dkt. No. 16-2 at 2; Galvan Decl. ¶ 5, Dkt. No. 16-3 at 2**;** Pl. Dep. at 27:18-28:5, Dkt. No. 16-4 at 31-32.  When inmates are in the corridors heading to the yard, there are typically numerous unsecured inmates filling the corridor.  Perez Decl. ¶ 9; Pl. Dep. at 28:16-19, 32:4-19, Dkt. No. 16-4 at 32, 36.

Part of the duties and expectations of correctional officers providing security in the corridor at yard time is to randomly pull inmates from the crowds exiting the building and conduct random clothed body searches of the inmates for the purpose of detecting contraband and/or weapons.  Perez Decl. ¶¶ 7, 8; Galvan Decl. ¶¶ 3, 5; Pl. Dep. at 35:25-36:6, Dkt. No. 16-4 at 39-40.  While inmates are on the yard, they are unsecured and able to interact freely with hundreds of inmates, from their own buildings and from others.  Perez Decl. ¶ 7; Galvan Decl. ¶ 4; Pl. Dep. at 34:15-19, 35:6-14, Dkt. No. 16-4 at 38, 39.  These circumstances create a situation where other inmates have greater opportunity to pass and move contraband between buildings and/or assault other inmates or staff, including with the use of weapons.  Perez Decl. ¶¶ 7, 8; Galvan Decl. ¶ 4.  One of the primary job duties of correctional officers is to monitor the safety and security of other inmates.  Galvan Decl. ¶ 3.  It is also a primary job duty of correctional officers to attempt to locate and confiscate contraband, thereby preventing the free movement of contraband throughout a facility.  *Id.*; Perez Decl. ¶ 7.

## A.    <u>May 12, 2021 - Clothed Body Search</u>

According to Plaintiff, there were numerous "inappropriate" clothed body searches by Defendant.  Dkt. No. 1 at 6.  In this action, Plaintiff alleges that on May 12, 2021, Defendant conducted another clothed body search tantamount to a sexual assault, by squeezing Plaintiff's penis and causing sharp pain.  *Id*.  Plaintiff alleges that prior to this incident, Defendant would come to his cell several times and stare at Plaintiff for "five seconds at a time."  *Id.*

3

United States District Court
Northern District of California

1    During his deposition, Plaintiff provided a more detailed description of what

2    occurred.  Plaintiff was in the corridor heading for yard time.  Pl. Dep. at 56:2-11, Dkt. No.

3    16-4 at 60.  Just as he had on prior occasions, Defendant ordered Plaintiff to submit to a

4    clothed body search.  *Id.* at 56:11-13.  At the time of the search, Plaintiff was wearing

5    boxers along with long, loose basketball shorts and a T-shirt.  *Id.* at 56:14-15, 57:11-58:3.

6    Plaintiff got against the wall and Defendant proceeded to search Plaintiff in the following

7    manner: "[Defendant] pulled my shorts all the way up, and he reached between my legs

8    from the back of me, and he grabbed and squeezed my penis."  *Id.* at 56:12-17.  This

9    clothed search of Plaintiff was entirely over his clothing and lasting no more than two to

10   three minutes.  *Id.* at 65:24-66:3, 69:25-70:5.  Defendant did not make any comments of a

11   sexual nature or otherwise speak to Plaintiff while he was conducting the search.  *Id.* at

12   59:5-8, 62:5-10.  Plaintiff stated that though the squeeze caused him pain, it subsided after

13   a couple of minutes.  *Id.* at 64:25-65:1-15.  Plaintiff did not seek or receive any medical

14   treatment because of this incident.  *Id.* at 65:11-15, 125:8-10.

15   Plaintiff has seen Defendant searching other inmates in the hallway.  Pl. Dep. at

16   39:2-3.  Plaintiff has also seen other correctional officers searching other inmates in the

17   hallway.  *Id.* at 33:20-25.  Plaintiff admits that searching inmates in the hallway on their

18   way to the yard was not outside of policy and was done for security purposes.  *Id*. at 38:1-

19   11, 34:10-14.

20   According to Defendant, he was not particularly familiar with Plaintiff at the time

21   of the searches alleged by Plaintiff in April and May 2021, nor did he have personal

22   knowledge of Plaintiff or have any issues with him.  Perez Decl. ¶ 10.  Defendant states

23   that the searches of Plaintiff were random.  *Id.*  A standard clothed body search per policy

24   includes retrieval of all items from clothing pockets, patting down the inmate's entire body

25   over their clothing, and seizing any prohibited items or contraband.  *Id.* at ¶ 11.  A standard

26   clothed body search of a male inmate may include brief and incidental contact with an

27   inmate's groin and a sweep between the glutes to eliminate the possibility that an inmate is

28

4

hiding something in that area. *Id.* In Defendant's training and experience, the genital and anal areas are common areas for inmates to conceal prohibited areas. *Id.* Defendant states that he conducted the clothed body search of Plaintiff in May 2021, in accordance with his normal clothed body search procedures pursuant to policy. *Id.* at ¶ 13. Defendant disputes the way Plaintiff claims the search occurred. *Id.* Defendant Perez denies squeezing Plaintiff's penis while conducting the search. *Id.* at ¶ 14. Defendant denies conducting the search in a sexual manner or with sexual intent or having any sexual purpose for conducting the search of Plaintiff. *Id.* at ¶ 15. Defendant also denies ever making any comments to Plaintiff of a sexual or suggestive nature during this particular search or at any time. *Id.* at ¶ 16.

On May 19, 2021, Plaintiff filed a grievance (Log No. 120920) alleging that Defendant conducted a sexually inappropriate search of him on May 12, 2021. Dkt. No. 1 at ¶ 9; Pl. Dep., Ex. B at AGO000073-AGO000079, Dkt. No. 16-4 at 146-152; Monroy Decl. ¶ 8, Dkt. No. 16-1. Plaintiff submitted the grievance by placing it in a locked box in the housing unit specifically intended for the submission of grievances. Pl. Dep. at 70:16-71:15, Dkt. No. 16-4 at 74-75. The Grievance Office at CTF received this grievance on May 24, 2021. Monroy Decl. at ¶ 8, Ex. G, Dkt. No. 16-1 at 6. A response was issued to Plaintiff on July 17, 2021, which rejected the claim. Pl. Dep., Ex. B at AGO000077, Dkt. No. 16-4 at 150. On October 25, 2021, Plaintiff's appeal of the matter was denied, exhausting his administrative remedies. *Id.* at AGO000079, Dkt. No. 16-4 at 152.

**B.**    **May 22, 2021 - Cell Search**

According to Plaintiff, after he filed grievance Log No. 120920 on May 19, 2021, Defendant Perez retaliated against him on May 22, 2021, by trashing his cell while Plaintiff was at the recreational yard. Dkt. No. 1 at 7; Monroy Decl. ¶ 8, Dkt. No. 16-1 at 2. Plaintiff claims Defendant poured coffee on his bed and floor, opened several bags of potato chips and poured the contents on the floor, as well as threw linen and sheets onto the floor. *Id.*

According to Defendant, he searched Plaintiff's cell on that day with a partner, as evidenced by the cell search slip he left in the cell after the search.  Perez Decl. ¶ 19, Ex. I. As part of his duties, Defendant was expected to conduct three (3) random searches per shift during morning and afternoon shifts.  Perez Decl. ¶ 18; Galvan Decl. ¶ 6 (policy in 2021 for correctional officers to conduct a certain number of cell searches during each shift).  Defendant did not locate any contraband during the search of Plaintiff's cell.  Perez Decl. ¶ 19, Ex. G.  Defendant denies dumping coffee grounds or chips on the floor and bed or throwing things around the cell.  *Id.*  Furthermore, Defendant states that he was not aware at the time he conducted the cell search that Plaintiff had filed a grievance against him related to the May 12, 2021, clothed body search of Plaintiff.  *Id.* at ¶ 20.  Defendant was approached about the grievance on May 22, 2021, after he had already searched Plaintiff's cell.  *Id.* at ¶ 22.

Plaintiff admitted in deposition that nobody actually saw Defendant "trash" Plaintiff's cell or throw anything onto the ground of his cell; rather, Plaintiff assumed that Defendant was the one who "tore up" his cell.  Pl. Dep. at 87:6-88:11.

Plaintiff filed a grievance (Log No. 141446) claiming that Defendant "trashed" his cell on May 22, 2021.  Dkt. No. 1 at ¶ 12; Pl. Dep. at 93:13-94:8, Ex. B at AGO000080-AGO000086, Dkt. No. 16-4 at 153-159.  The grievance was received by the Grievance Office at CTF on July 2, 2021.  Dkt. No. 16-4 at 153.  The Grievance Office issued Plaintiff a response on August 17, 2021.  Dkt. No. 16-4 at 155-156; Monroy Decl. ¶ 9. Plaintiff did not appeal this grievance to the Office of Appeals until October 20, 2021. Dkt. No. 16-4 at 159.  The appeal of Log No. 141446 was rejected by the Office of Appeals for being untimely.  *Id.*; Pl. Dep. at 101:23-102:14.  Plaintiff did not appeal the rejection of this grievance to the Office of Appeals.  Pl. Dep. at 102:15-103:4.

### C.  <u>August 27, 2021 – Clothed Body Search and Rules Violation Report</u>

On August 27, 2021, Defendant Perez stopped Plaintiff on his way to the yard.  Dkt. No. 1 at 7; Pl. Dep. at 104:4-8; *id.*, Ex. D at AGO000059, Dkt. No. 16-4 at 160**;** Perez

Decl. ¶¶ 23, 26.  Defendant ordered Plaintiff to submit to a clothed body search.  *Id.*
According to Defendant, he pulled Plaintiff randomly from the line and was not aware of
who Plaintiff was at the time, nor did he have any understanding then or now that he was
prohibited from searching Plaintiff for any reason.  Perez Decl. ¶¶ 23, 24.

According to Plaintiff, Defendant stated the following when he stopped Plaintiff:
"You know I need to search you when I see you[,] Clark, you wrote me up!"  Dkt. No. 1 at
7; Pl. Dep. at 104:9-11.  Fearing another sexual assault, Plaintiff refused to submit to a
search by Defendant and requested that another officer search him.  *Id.*; Pl. Dep. at 107:11-
14, 104:13-15.  Defendant "immediately got upset," then handcuffed Plaintiff and escorted
him to a holding cage.  Dkt. No. 1 at 7-8.

According to Defendant, Plaintiff refused to comply with Defendant's direct order
to submit to a search, stating: "Fuck you and your pat down! I got PREA[4] on you, call a
Sergeant, call the Lieutenant!"  Perez Decl. ¶¶ 23, 26; Ex. D at AGO000059, Dkt. No. 16-4
at 160.  Defendant again gave Plaintiff a direct order to be searched, and Plaintiff again
refused to allow Defendant to search him, stating: "Fuck No! I'll choose who pats me
down."  *Id.*  Based upon Plaintiff's disruption and failure to comply with direct orders,
Defendant stopped all movement of inmates in the hallway and handcuffed Plaintiff.  Perez
Decl. ¶ 30; Pl. Dep. at 109:2-8, Ex. D at AGO000059.  Defendant's actions were
consistent with policy in response to an inmate who disobeys a direct order to submit to a
search.  Galvan Decl. ¶ 11; Perez Decl. ¶ 31.  Plaintiff was escorted to a holding cell.  *Id.*;
Pl. Dep. at 104:18-21, 107:17-25, 108:22-109:2, Ex. D at AGO000059.  Defendant had no
further interaction with Plaintiff after he took Plaintiff into custody and had him escorted
to the holding cell**.**  Perez Decl. ¶ 32; Pl. Dep. at 108:22-109:11.  It was Defendant's
understanding that Plaintiff would be contacted by a supervisor while in the holding cell to

_____

[4] "PREA" refers to the "Prison Rape Elimination Act," which prohibits abusive sexual
contact and nonconsensual sex acts within correctional facilities throughout the country.  It
includes sexual harassment by inmates against other inmates as well as by staff.  *See* Cal.
Code Regs. tit. 15 § 3401.5 https://www.cdcr.ca.gov/prea/prea/

United States District Court
Northern District of California

discuss the incident.  Perez Decl. ¶ 31; Galvan Decl. ¶ 11.  Defendant had no authority or power over when Plaintiff would be released from the holding cell and whether he would be permitted to attend any portion of yard.  Perez Decl. ¶ 32.  It was a supervisor's responsibility to determine when Plaintiff would be released from the holding cell.  *Id.*; Galvan Decl. ¶ 11.  A supervisor, Sgt. Abanico, came to meet with Plaintiff within thirty (30) minutes of Plaintiff being placed in the holding cell, and eventually released Plaintiff back to his housing.  Pl. Dep. at 108:1-5, 14-21, 109:12-20.

At the time this incident occurred on August 27, 2021, the PREA investigation into Plaintiff's allegations related to the clothed body search of Plaintiff from May 12, 2021, had concluded on or about July 21, 2021, and the allegations were found to be unsubstantiated.  Galvan Decl. ¶ 8; Pl. Dep. at 82:3-8, Ex. B at AGO000077, Dkt. No. 16-40 at 150.  Therefore, there were no prohibitions against Defendant searching Plaintiff, and Defendant was aware of none.  Perez Decl. ¶ 24; Galvan Decl. ¶ 7; Pl. Dep. at 103:14-106:10.  Specifically, there is no policy under PREA that mandates that an officer accused of sexual assault cannot search the reporting inmate in perpetuity or once the investigation has been concluded with the allegations being unfounded.  *Id.*  An inmate is required by statute to comply with direct orders given by custody staff, including orders to submit to a clothed body search.  Cal. Code. Regs., tit. § 3005(b); Galvan Decl. ¶ 9; Perez Decl. ¶¶ 28-29.  An inmate is not permitted to dictate who searches them.  Galvan Decl. ¶ 10; Perez Decl. ¶ 28.  Because Defendant had to deal with the disruption caused by Plaintiff's failure to comply with direct orders to be searched, Defendant was delayed in his duties and the other inmates were delayed from going to yard.  Perez Decl. ¶ 33; Pl. Dep. at 109:1-8, Ex. D at AGO000059.

As a result of Plaintiff's actions, Defendant issued Plaintiff a Rules Violation Report ("RVR") (Log No. 7115761) charging Plaintiff with "Delaying a Peace Officer in Performance of His Duties," pursuant to Cal. Code Regs., tit. § 3005(a).  Perez Decl. ¶ 34; Pl. Dep., Ex. D at AGO 000059, Dkt. No. 16-4 at 160.  Plaintiff claims Defendant

1   fabricated the RVR, falsely accusing Plaintiff of refusing a pat down and acting

2   aggressively.  Dkt. No. 1 at 8.  Plaintiff was subsequently found guilty of this charge at a

3   disciplinary hearing and was assessed sixty-one (61) days credit loss.  Pl. Dep. at 112:10-

4   113:6, Ex. D at AGO000068, Dkt. No. 16-4 at 172.

5       On September 22, 2021, Plaintiff filed a grievance (Log No. 168099) related to the

6   August 27, 2021 clothed body search incident, claiming ongoing aggravated staff

7   misconduct and retaliation.  Dkt. No. 1 at 8; Pl. Dep. at 115:12-22, Ex. E at AGO000087-

8   AGO000092, Dkt. No. 16-4 at 174.  The grievance made no mention of the RVR, nor raise

9   any claims that Defendant issued Plaintiff a fabricated RVR or that the issuance of an RVR

10  was retaliatory in nature.  Monroy Decl. ¶ 10; Pl. Dep., Ex. E at AGO000087-

11  AGO000088.

12      Plaintiff filed another grievance under Log No. 181321, which was received by the

13  Grievance Office on October 29, 2021.  Monroy Decl. ¶ 11, Ex. H, Dkt. No. 16-1 at 8-23.

14  The focus of the grievance was Plaintiff's claim that his due process rights were violated

15  during the hearing on the RVR issued by Defendant for the August 27, 2021 incident.  *Id.*

16  at 10, 13.  Plaintiff also complained that Defendant issued him a false RVR for the August

17  27, 2021 incident.  *Id.*  On December 2, 2021, the Grievance Office issued a response to

18  Log No. 181321, rejecting the portion of the grievance related to Plaintiff's claim that

19  Defendant issued him a false RVR in retaliation for protected activity as being untimely.

20  Monroy Decl. ¶ 11, Ex. H, Dkt. No. 16-1 at 8-9.  Plaintiff did not appeal the rejection of

21  that portion of Log No. 181321 addressing allegations against Defendant to the Office of

22  Appeals.  Monroy Decl. ¶ 12.

23      Plaintiff claims Defendant's actions were "pervasive, willful, wanton, reckless,

24  deliberate, retaliatory, sadistic, done with evil motive and a total disregard for the rights of

25  Plaintiff."  Dkt. No. 1 at 8.  Plaintiff also claims generally that Defendant's actions did not

26  advance any legitimate penological goal and had a "'chilling effect'" on his rights.  *Id.* at

27  8-9.  Plaintiff claims he suffered wanton and unnecessary excruciating pain, suffering,

28

United States District Court
Northern District of California

permanent emotional and psychological injuries.  *Id.* at 9.  The Court found Plaintiff's allegations were sufficient to state cognizable claims under the First and Eighth Amendments.  Dkt. No. 5 at 2.

## II.   **Summary Judgment**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id*. at 325.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp.*, 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  *Id*. at 323.  If the

1    evidence in opposition to the motion is merely colorable, or is not significantly probative,

2    summary judgment may be granted.  *See Liberty Lobby*, 477 U.S. at 249-50.

3         The Court's function on a summary judgment motion is not to make credibility

4    determinations or weigh conflicting evidence with respect to a material fact.  *See T.W.*

5    *Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

6    The evidence presented and the inferences to be drawn from the facts must be viewed in a

7    light most favorable to the nonmoving party.  *See id.* at 631.  The nonmoving party has the

8    burden of identifying with reasonable particularity the evidence that precludes summary

9    judgment.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  If the nonmoving party

10   fails to do so, the district court may properly grant summary judgment in favor of the

11   moving party.  *See id.*

12        **A.**      <u>**Eighth Amendment – Sexual Assault**</u>

13        Plaintiff claims Defendant's actions on May 12, 2021, constitute sexual assault in

14   violation of the Eighth Amendment.

15        "Sexual harassment or abuse of an inmate by a corrections officer is a violation of

16   the Eighth Amendment."  *Wood v. Beauclair*, 692 F.3d 1041, 1046, 1048-51 (9th Cir.

17   2012) (citations omitted).  In evaluating a prisoner's claim of sexual harassment or abuse,

18   courts consider whether "the officials act[ed] with a sufficiently culpable state of mind"

19   and if the alleged wrongdoing was objectively "harmful enough" to establish a

20   constitutional violation.  *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

21        "A prisoner presents a viable Eighth Amendment claim where he or she proves that

22   a prison staff member, acting under color of law and without legitimate penological

23   justification, touched the prisoner in a sexual manner or otherwise engaged in sexual

24   conduct for the staff member's own sexual gratification, or for the purpose of humiliating,

25   degrading, or demeaning the prisoner."  *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th

26   Cir. 2020).  "[A]ll of the elements of a Section 1983 sexual assault claim are established if

27   a prisoner proves that a sexual assault occurred."  *Id.* at 1145.  There are occasions when

28    

*United States District Court*
*Northern District of California*

1   legitimate penological concerns require invasive searches, and the courts owe prison staff

2   deference because of prisons' "unique security concerns." *Id.*  Thus, when the assault

3   begins as a legitimate, albeit invasive, penological procedure, the prisoner must show that

4   the official's "conduct exceeded the scope of what was required to satisfy whatever

5   institutional concern justified the initiation of the procedure." *Id.*

6          Sexual assault, coercion and harassment certainly may violate contemporary

7   standards of decency and cause physical and psychological harm, *see Jordan v. Gardner*,

8   986 F.2d 1521, 1525-31 (9th Cir. 1993) (en banc); *Women Prisoners of the District of*

9   *Columbia Dep't of Corrections v. District of Columbia*, 877 F. Supp. 6 34, 664-67 (D.D.C.

10   1994); however, not every malevolent touch by a prison guard or official gives rise to an

11   Eighth Amendment violation  - the Eighth Amendment's prohibition against cruel and

12   unusual punishment necessarily excludes from constitutional recognition de minimis uses

13   of force.  *See Hudson*, 503 U.S. at 9-10.  Mere humiliation does not rise to the level of

14   severe psychological pain required to state an Eighth Amendment claim.  *Watison v.*

15   *Carter*, 668 F.3d 1108, 1112-14 (9th Cir. 2012) (no 8th Amendment violation against

16   officer who was alleged to have rubbed his thigh against plaintiff's thigh while plaintiff

17   was on toilet and to have begun smiling before leaving cell laughing because the alleged

18   wrongdoing was not objectively harmful enough to establish a constitutional violation);

19   *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (plaintiff must show more

20   than de minimis injury), *cert. denied*, 513 U.S. 1114 (1995); *Berryhill v. Schriro*, 137 F.3d

21   1073, 1076 (8th Cir. 1998) (no 8th Amendment violation where employees briefly touched

22   inmate's buttocks with apparent intent to embarrass him, and touching was unaccompanied

23   by any sexual comments or banter); *Green v. Thompson*, No. C 10-5721 WHA (PR), 2013

24   WL 550621, *2 (N.D. Cal. Feb. 12, 2013) (granting defendants' motion for summary

25   judgment on prisoner's Eighth Amendment claim that over the course of three weeks and

26   between one and three times, prison guard grabbed prisoner's buttocks and testicles, and

27   made sexual comments to prisoner because it did not rise to the level of constitutional

28                                                         12

United States District Court
Northern District of California

1   violation).

2      Here, there is an absence of evidence that the clothed body search on May 12, 2021,

3   was performed without legitimate penological justification and in a sexual manner for

4   Defendant's own sexual gratification or other reason under *Bearchild*, 947 F.3d at 1144.

5   In is undisputed that random clothed body searches during yard release were necessary

6   based on legitimate penological concerns over inmates' possession of contraband and

7   weapons.  The only dispute is over the characterization of the search: Plaintiff claims

8   Defendant grabbed and squeezed his penis to constitute sexual assault while Defendant

9   denies that the search involved such an act.  But even if we assume Plaintiff's version of

10  events is true, *i.e.*, that Defendant did grab and squeeze his penis, there is no evidence to

11  support Plaintiff's characterization of the touch as sexual.  Plaintiff admits that the search

12  was entirely over his clothing, lasted no more than a few minutes, and that Defendant

13  made no comments of a sexual nature or otherwise speak to Plaintiff during the search.

14  *Supra at* 4.  Furthermore, Defendant states that he did not conduct the search in a sexual

15  manner or with sexual intent or have any sexual purpose.  *Id.*  Plaintiff points to no

16  evidence other than the fact that he was briefly touched to support his claim that this was

17  some sort of sexual assault.  *See Berryhill*, 137 F.3d at 1076.  Rather, the evidence

18  indicates that Defendant's conduct did not exceed the scope of what was required to

19  conduct the clothed body search: it was entirely over his clothing and lasted no more than a

20  few minutes.  *Bearchild*, 947 F.3d at 1145.  Lastly, Plaintiff has failed to show objectively

21  serious injury (either physical or psychological) to have arisen from the incident.  In his

22  complaint, Plaintiff alleged that he suffered "excruciating pain, suffering, permanent

23  emotional and psychological injuries."  Dkt. No. 1 at 9.  However, he admitted in

24  deposition that the "sharp pain" he experienced subsided after a couple of minutes.  *See*

25  *supra* at 4.  He also did not seek or receive any medical treatment because of this incident.

26  *Id.*  Nor has he come forward with evidence in response to Defendant's summary judgment

27  motion, indicating that he received treatment for any psychological harm from the incident.

28                                                     13

United States District Court
Northern District of California

1

2

3

4

5

6

"Demonstrating a serious or permanent injury is not required to make out an Eighth Amendment claim, but some actual injury must be shown and the extent of the injury and pain suffered are relevant concerns in determining whether the conduct amounts to cruel and unusual punishment." *Berryill*, 137 F.3d at 1076-77 (internal citation omitted). Plaintiff has shown no injury.  What remains is a single incident involving de minimis force which does not give rise to an Eighth Amendment violation.

7

8

9

10

11

12

13

14

15

16

17

For these reasons, there is an absence of evidence that Plaintiff suffered an objectively, sufficiently serious harm as a result of the May 12, 2021 clothed body search to violate the Eighth Amendment.  Defendant has shown that there is no genuine issue of material fact as to whether Defendant violated Plaintiff's Eighth Amendment rights. *See Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to Plaintiff to designate specific facts showing that there is a genuine issue for trial.  Having filed no opposition, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, *Celotex Corp.*, 477 U.S. at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *Keenan*, 91 F.3d at 1279.  Accordingly, Defendant is entitled to judgment as a matter of law on the Eighth Amendment claim against him. *Id.*; *Celotex Corp.*, 477 U.S. at 323.

18

**B**.    **First Amendment - Retaliation**

19

20

21

22

Plaintiff claims that Defendant acted in retaliation when: 1) he searched Plaintiff's cell on May 22, 2021, and 2) he attempted another clothed body search on August 27, 2021, and when Plaintiff requested another officer, Defendant fabricated an RVR based on the incident.

23

24

25

26

27

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th

28

United States District Court
Northern District of California

Cir. 2005) (footnote omitted).

The second element, causation, requires showing that the prison official intended to take the adverse action out of "retaliatory animus" to "silence and to punish" the inmate, as opposed to for some other reason. *Shepard v. Quillen*, 840 F.3d 686, 689-91 (9th Cir. 2016) (finding genuine issue of material fact as to whether defendant sent inmate to ad seg with intent to (1) follow 15 Cal. Code Regs. § 3335(a) or (2) retaliate for inmate's complaint about staff misconduct).  Evidence probative of retaliatory animus includes proximity in time between the protected speech and the alleged adverse action, prison official's expressed opposition to the speech, and prison official's proffered reason for the adverse action was false or pretextual. *See id.* at 690; *see also Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (non-prisoner case).  Retaliatory motive may also be shown by inconsistency with previous actions, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003).  Mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

### 1.   <u>May 22, 2021 Cell Search</u>

Defendant asserts that he is entitled to summary judgment on this first retaliation claim because: 1) there is no admissible evidence that the alleged "trashing" of Plaintiff's cell was because of any protected conduct of Plaintiff; 2) there is no admissible evidence that Defendant actually "trashed" the cell; and 3) Plaintiff did not exhaust his administrative remedies related to this claim.  Dkt. No. 16 at 19.

Defendant contends that the undisputed evidence shows that the Grievance Office did not receive Plaintiff's grievance until May 24, 2021, which was two days *after* the May 22, 2021 cell search. *Id.* at 20.  Furthermore, Defendant asserts that he was not aware that Plaintiff filed a grievance against him when he searched Plaintiff's cell, and there is no evidence to show otherwise. *Id.*  Defendant also points to Plaintiff's deposition, wherein

United States District Court
Northern District of California

Plaintiff admitted that he is not aware what happened to the grievance after he placed it in the locked mailbox and that to his knowledge, no one saw him do so.  *Id.*, citing Pl. Dep. 70:16-71:15, 72:25-73:3.  Moreover, there is no evidence that Defendant ever referenced Plaintiff's grievance on the day of the challenged cell search.  *Id.*  Plaintiff asserted in deposition that he believed Defendant trashed his cell in retaliation for the grievance which he filed two days prior because Defendant was "agitated" and "mad" that day and that he could "see it on [Defendant's] face."  Pl. Dep. at 92:4-14.  Defendant asserts that this assertion is nothing more than speculation which is insufficient to support a retaliation claim.  Dkt. No. 16 at 20.  Lastly, Defendant asserts that the only evidence Plaintiff alludes to which would even suggest a possible motive for Defendant to allegedly trash his cell is Plaintiff's claim that Defendant asked him, "do you still think I'm a homosexual?" that day as Plaintiff was leaving for the yard.  *Id.* at 21, citing Pl. Dep. at 82:11-14.  Plaintiff essentially accused Defendant of being a "homosexual" on at least two occasions before the May 22, 2021 cell search.  *Id.*, citing Pl. Dep. at 42:15-43:11, 56:18-22; Dkt. No. 1 at 6.  Defendant asserts that this evidence only suggests that the only motivation Defendant had for allegedly "trashing" Plaintiff's cell was because he was upset that Plaintiff repeatedly accused him of being homosexual in an insulting manner.  *Id.*  Defendant asserts that Plaintiff's behavior in this regard is not protected conduct under the First Amendment, and Plaintiff cannot point to any case establishing otherwise.  *Id.*; *id.*, fn. 3.

Secondly, Defendant asserts that Plaintiff has no admissible evidence that Defendant was the one who trashed Plaintiff's cell.  Dkt. No. 16 at 22.  Plaintiff did not witness the search, and that countless number of people, including inmates, could have had access to his cell throughout the day.  *Id.*  The only evidence Plaintiff points to is the cell search receipt left by Defendant and alleged statements by unidentified inmates who told Plaintiff that Defendant trashed his cell without actually having witnessed Defendant (or anyone) in the act.  *Id.*  Plaintiff admitted during deposition that he had assumed that what had happened was that other inmates went into his cell after Defendant had left and saw it

"trashed"; no one had actually told him that this was the case.  *Id.*, citing Pl. Dep. at 88:1-11.  Accordingly, Defendant asserts that Plaintiff cannot establish that Defendant took any adverse against him on May 22, 2021, and therefore cannot establish a retaliation claim.  *Id.*

After a careful review of the evidence and construing it in the light most favorable to Plaintiff, the Court finds there exists no genuine dispute as to any material fact relating to Plaintiff's retaliation claim against Defendant based on the May 22, 2021 cell search.  It is undisputed that Defendant conducted the search.  The existing disputes are over why Defendant conducted the search, *i.e.*, whether it was random or *because of* Plaintiff's grievance against him, and whether Defendant was the one who actually "trashed" Plaintiff's cell.  With regard to the second dispute, it is immaterial whether Defendant "trashed" the cell during his search because the fact that the cell search was conducted at all because of retaliatory motives is sufficient to satisfy the first *Rhodes* element.  With regard to the first dispute, there is no evidence that the cell search was conducted *because of* Plaintiff's grievance.  *See supra* at 6.  Defendant attests that he was unaware that a grievance was filed against him at the time, and Plaintiff offers no evidence in opposition to show otherwise.  *Id.*  Without evidence of retaliatory motive based on the grievance, Plaintiff's claim in this regard is conclusory.  Furthermore, although immaterial, there is no evidence to support the claim that Defendant was the one who "trashed" the cell in retaliation during an otherwise random search.  By Plaintiff's own admission, his belief that Defendant was responsible for the condition of his cell when he returned from the yard is based on speculation and assumptions and not supported by personal knowledge or other eyewitness testimony.  *Id*.  On the other hand, Defendant attests that he did not "trash" Plaintiff's cell during the search.  Dkt. No. 16-2 at 4.  In response to Defendant's motion and supporting papers, Plaintiff has filed no opposition demonstrating the existence of specific facts indicating that Defendant did have knowledge of Plaintiff's grievance at the time he searched Plaintiff's cell and that he also "trashed" it in retaliation to create a

United States District Court
Northern District of California

1    genuine dispute over this material fact.

2         With regard to Defendant's argument that Plaintiff's insulting[5] comments are not

3    protected conduct, Defendant has failed to support this assertion with any caselaw and

4    improperly puts the onus on Plaintiff.  A prisoner retains those First Amendment rights

5    that are "not inconsistent with his status as a prisoner or with the legitimate penological

6    objectives of the corrections system."  *Prison Legal News v. Cook*, 238 F.3d 1145, 1149

7    (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S.

8    119, 129 (1977)) (internal quotation marks omitted).  The Supreme Court has made clear

9    that offensive speech is protected by the First Amendment.  *See Texas v. Johnson*, 491

10   U.S. 397, 414 (1989); *see also Snyder v. Phelps*, 562 U.S. 443, 454-55 (2011) (finding

11   First Amendment protected "hate" speech and shielded defendants from tort liability).

12   Accordingly, the Court is not persuaded that Plaintiff's speech is not protected under the

13   First Amendment.

14        Even if it could be said that Defendant retaliated against Plaintiff because of his

15   insulting speech, Plaintiff cannot proceed on such a claim because he did not exhaust

16   administrative remedies for this claim or for any claim based on the cell search.  The

17   Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996)

18   ("PLRA"), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with

19   respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

20   prisoner confined in any jail, prison, or other correctional facility until such administrative

21   remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  An action must be

22   dismissed unless the prisoner exhausted available administrative remedies <u>before</u> he filed

23   suit.  *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).  The PLRA's

24   exhaustion requirement cannot be satisfied "by filing an untimely or otherwise

25   _____

26   [5] The Court uses the term "insulting" in the same way Defendant describes it in his motion:
     "it is not the identification as homosexual that is an insult, it is the tone and tenor in which

27   Plaintiff admits he relayed the comments to Defendant which would classify it as
     insulting."  Dkt. No. 16 at 15, fn. 3.

28                                                                    18

procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion." *Id.* at 92. Therefore, the PLRA exhaustion requirement requires proper exhaustion. *Id.* "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91 (footnote omitted). A prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Id.* at 83-84.

It is undisputed that Plaintiff filed a grievance regarding the unlawful cell search, Log No. 141446, which was received by the Grievance Office on July 2, 2021. *See supra* at 6. After the Grievance Office issued their response on August 17, 2021, Plaintiff did not appeal the matter until October 20, 2021. *Id.* The appeal was therefore rejected by the Office of Appeal as untimely. *Id.* Plaintiff did not appeal the rejection of that grievance. *Id.* Defendant argues that a claim that is rejected at any level of the appeal is not considered exhausted. Dkt. No. 16 at 24, citing Cal. Code Regs., tit. 15, § 3486(m). Here, the filing of an untimely grievance or appeal is not proper exhaustion. *See Woodford*, 548 U.S. at 83-84. In response, Plaintiff has filed no opposition asserting that he did properly exhaust this claim, or that exhaustion was futile or otherwise unavailable to him.

Based on the undisputed facts, Defendant has shown there is an absence of a genuine dispute of material fact with respect to the retaliation claim against him based on the May 22, 2021 cell search. *See Celotex Corp.*, 477 U.S. at 323. Having filed no opposition, Plaintiff has failed to meet his burden of identifying with reasonable particularity the evidence that precludes summary judgment, *see Keenan*, 91 F.3d at 1279. Accordingly, Defendant is entitled to summary judgment on this claim. *See Celotex Corp.*, 477 U.S. at 323.

### 2.   <u>August 27, 2021 –Clothed Body Search Incident</u>

Defendant asserts that to the extent that Plaintiff identifies Defendant's order to submit to a clothed body search on August 27, 2021, as an "adverse action," a retaliation claim based thereon must fail.  Dkt. No. 16 at 26.  Defendant also contends that the placement of Plaintiff in a holding cell and preventing him from attending yard do not constitute retaliation.  *Id.* at 27.  Defendant first asserts that the Court did not identify these acts as separate retaliation claims.  *Id.* at 26, 27.  Defendant further contends that even if these claims were to proceed, the undisputed evidence does not support these actions as being retaliatory.  *Id.*  First, Defendant asserts that a mere order to search Plaintiff cannot be construed as retaliatory, especially since Defendant did not actually search Plaintiff nor did he force Plaintiff to undergo a search after he refused the direct order.  *Id.* at 27.  Furthermore, Defendant asserts that Plaintiff cannot support a claim that Defendant's order was based upon Plaintiff's filing of a complaint against him.  *Id.*  Lastly, Defendant asserts that the undisputed evidence establishes that the PREA investigation into Plaintiff's allegations against Defendant had concluded and were unsubstantiated.  *Id.*  With regard to the placement in the holding cell, Defendant asserts that the undisputed evidence shows that Plaintiff violated a direct order and Defendant was following policy in dealing with that situation and not acting retaliation.  *Id.* at 27-28.

As to whether Plaintiff states a claim based on an order to submit to a clothed search and subsequent holding cell placement, federal courts must construe *pro se* complaints liberally.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  A *pro se* plaintiff need only provide defendants with fair notice of his claims and the grounds upon which they rest.  *See Hearns v. Terhune*, 413 F.3d 1036, 1043 (9th Cir. 2005).  The fact that Defendant answered on these "claims" indicates that the allegations were sufficient to give Defendant fair notice of them and the grounds upon which they rest.

After a careful review of the evidence and construing it in the light most favorable to Plaintiff, the Court finds there exists no genuine dispute as to material facts relating to

Plaintiff's retaliation claim against Defendant based on the August 27, 2021 attempted clothed body search.  Plaintiff claims that Defendant stated the following when he stopped Plaintiff that day: "You know I need to search you when I see you[,] Clark, you wrote me up!"  Dkt. No. 1 at 7; Pl. Dep. at 104:9-11.  Defendant attests that at the time of this search, he was not aware of Plaintiff's identity and that he randomly pulled Plaintiff from the line for the clothed search.  *See supra* at 7.  Viewing the facts in the light most favorable to Plaintiff and assuming Defendant did make the alleged statement, it is evidence that Defendant intended to search Plaintiff because of a grievance he filed, which satisfies the second and third *Rhodes* elements.

Defendant contends that Plaintiff cannot satisfy the first *Rhodes* element because the mere order to submit to a clothed body search does not amount to an adverse act.  The Court agrees.  The mere threat of harm can be a sufficiently adverse action to support a retaliation claim.  *Shepard v. Quillen*, 840 F.3d 686, 688-89 (9th Cir. 2016).  Harm that "would chill a 'person of ordinary firmness' from complaining" is sufficient.  *Id.* at 691 (quoting *Rhodes*, 408 F.3d at 569) (placement in administrative segregation or even threat do so on its own amounts to adverse action satisfying the first element).  However, in this case it cannot be said that the mere threat of a clothed body search was sufficient to chill a "person of ordinary firmness" from complaining, especially when such searches were regularly and randomly conducted every time inmates went to the yard, which was on a daily basis.  In response, Plaintiff has filed no opposition pointing to facts showing otherwise.

Furthermore, even if the mere threat of a clothed body search constituted an adverse act, there is no indication that this particular act "chilled" the exercise of Plaintiff's First Amendment rights to satisfy the fourth *Rhodes* element.  According to Defendant, Plaintiff refused in no uncertain terms to allow Defendant to "pat" him down.  *See supra* at 7.  Plaintiff subsequently filed a grievance, complaining of Defendant's actions from that day.  *Id.* at 9.  Then Plaintiff filed another grievance complaining about the RVR.  *Id.*

21

The undisputed facts, construed in the light most favorable to Plaintiff, also show that there is no genuine dispute of material fact with respect to the retaliation claim based on Plaintiff's placement in the holding cell which precluded him from accessing the yard. It is undisputed that Plaintiff refused Defendant's direct order to submit to a clothed body search. *See supra* at 7.  It is also undisputed that Defendant followed policy in dealing with this situation, i.e., to handcuff Plaintiff and escort him to a holding cell.  *Id.* at 7-8. Lastly, the evidence submitted by Defendant shows that he had no authority thereafter to determine what occurred with Plaintiff.  *Id.* at 8.  It was up to the supervisor whether Plaintiff would be released for yard, and the undisputed facts show that Sgt. Abanico was the one who eventually released Plaintiff back to his housing.  *Id.*  Plaintiff has filed no opposition pointing to facts or evidence showing otherwise.

Based on the undisputed facts, Defendant has shown there is an absence of a genuine dispute of material fact with respect to the retaliation claims against him based on the August 27, 2021 incident.  *See Celotex Corp.*, 477 U.S. at 323.  Having filed no opposition, Plaintiff has failed to meet his burden of identifying with reasonable particularity the evidence that precludes summary judgment, *see Keenan*, 91 F.3d at 1279, or submit evidence from which a jury could reasonably render a verdict in his favor, *In re Oracle Corporation Securities Litigation*, 627 F.3d at 387.  Accordingly, Defendant is entitled to summary judgment on these claims.  *See Celotex Corp.*, 477 U.S. at 323.

### 3.   August 27, 2021 - RVR

Defendant asserts that he is entitled to summary judgment on the second retaliation claim because: 1) the evidence establishes that the RVR was not "fabricated," 2) the evidence does not support Plaintiff's claim that the RVR was issued in retaliation for any protected activity; and 3) Plaintiff did not exhaust his administrative remedies related to any allegations that the RVR was false or that it was issued as retaliation. Dkt. No. 16 at 24.  With regard to the first argument, Defendant asserts that Plaintiff admitted that he, in fact, did refuse to allow Defendant to search him when Defendant gave Plaintiff a direct

1   order to submit to a search.  *Id.*  Plaintiff asserts that he did not "refuse" to be searched, but

2   rather that he "requested" that another officer search him because he had previously filed a

3   PREA allegation against Defendant.  Dkt. No. 1 at 7.  Defendant asserts that it matters not

4   how Plaintiff characterizes the incident because Plaintiff ultimately did refuse a direct

5   order from Defendant to submit to a search, which is not permitted conduct.  Dkt. No. 16

6   at 25.  Defendant also asserts that the PREA investigation against him was closed more

7   than a month before this August 27, 2021 incident, and the allegations were found to be

8   unsubstantiated.  *Id.*, citing Galvan Decl. ¶ 8.  As such, there was no policy prohibiting

9   Defendant from searching Plaintiff at that time.  *Id.*

10          First, the Court notes that because the RVR involved the loss of 61 days of credit,

11  the claim for damages appears to be barred by *Heck v. Humphrey*, 512 U.S. 477, 486-487

12  (1994).  The rule set forth in *Heck* requires that before a 42 U.S.C. § 1983 plaintiff may

13  recover damages for an allegedly unconstitutional conviction or imprisonment, or for other

14  harm caused by actions whose unlawfulness would render a conviction or sentence invalid,

15  he must first prove that the conviction or sentence has been reversed on direct appeal,

16  expunged by executive order, declared invalid by a state tribunal authorized to make such

17  determination, or called into question by a federal court's issuance of a writ of habeas

18  corpus.  512 U.S. at 486-487.  A claim for damages regarding a conviction or sentence that

19  has not been so invalidated is not cognizable under § 1983.  *Id.* at 486–87.  *Heck* also bars

20  a claim of unconstitutional deprivation of time credits because such a claim necessarily

21  calls into question the lawfulness of the plaintiff's continuing confinement, i.e., it

22  implicates the duration of the plaintiff's sentence.  *See Sheldon v. Hundley*, 83 F.3d 231,

23  233 (8th Cir. 1996).  *Sheldon* has been followed by district courts within the Ninth Circuit.

24  *See Marquez v. CDCR*, 2020 WL 3574644 *2 (N.D. Cal); *Bullock v. Chenowith*, 2015 WL

25  7758476 *2 (C.D. Cal); *Jenkins v. Bartley*, 2008 WL 4058088 *5 (E.D. Cal).  Success on

26  Plaintiff's challenge to the RVR would necessarily imply that Plaintiff had been

27  unconstitutionally deprived of the 61 days of credits.  Accordingly, Plaintiff's claim for

28

United States District Court
Northern District of California

23

1   damages is barred by *Heck* such that he cannot bring an action for damages against

2   Defendant without first showing that the RVR has been invalidated.  *See Sheldon*, 83 F.3d

3   at 233.  He has not.  A claim barred by *Heck* is not cognizable and therefore should be

4   dismissed.  *See Edwards v. Balisok*, 520 U.S. 641, 649 (1997); *Trimble v. City of Santa*

5   *Rosa*, 49 F.3d 583, 585 (9th Cir. 1995) (claim barred by *Heck* may be dismissed sua sponte

6   without prejudice under 28 U.S.C. §1915).  But even if the claim was not *Heck*-barred,

7   Defendant is entitled to summary judgment on this claim.

8           After a careful review of the evidence and construing it in the light most favorable

9   to Plaintiff, the Court finds there exists no genuine dispute as to any material fact relating

10  to Plaintiff's retaliation claim against Defendant based on the RVR.  It is undisputed that

11  Plaintiff refused to allow Defendant to search him.  *See supra* at 7.  It is also undisputed

12  that because of Plaintiff's actions, Defendant was delayed in performing his duties, i.e.,

13  searching Plaintiff and causing inmate movement in the hallway to be halted.  *Id.*

14  Accordingly, the undisputed facts show that Plaintiff's actions caused a delay in the

15  performance of Defendant's duties.  It matters not that Plaintiff was willing to submit to a

16  search by *another* officer because it is undisputed that he delayed Defendant from

17  performing his duties.  Accordingly, Plaintiff's claim that the RVR was "fabricated" is

18  factually without merit.

19          Furthermore, the undisputed evidence shows that Plaintiff did not exhaust

20  administrative remedies regarding this claim.  Plaintiff did not file a grievance challenging

21  the RVR until October 2021, approximately two months after the incident.  *See supra* at 9.

22  The Grievance Office rejected the claim as untimely.  *Id.*  Plaintiff did not appeal the

23  rejection of this claim.  *Id.*  The filing of an untimely grievance or appeal is not proper

24  exhaustion.  *See Woodford*, 548 U.S. at 83-84.  In response, Plaintiff has filed no

25  opposition asserting that he did properly exhaust this claim, or that exhaustion was futile or

26  otherwise unavailable to him.

27          Based on the undisputed facts, Defendant has shown there is an absence of a

28                                                      24

United States District Court
Northern District of California

United States District Court
Northern District of California

genuine dispute of material fact with respect to the retaliation claim based on the RVR. *See Celotex Corp.*, 477 U.S. at 323.  Having filed no opposition, Plaintiff has failed to meet his burden of identifying with reasonable particularity the evidence that precludes summary judgment, *see Keenan*, 91 F.3d at 1279, or submit evidence from which a jury could reasonably render a verdict in his favor, *In re Oracle Corporation Securities Litigation*, 627 F.3d at 387.  Accordingly, Defendant is entitled to summary judgment on this claim.  *See Celotex Corp*., 477 U.S. at 323.

### C.     Conclusion

Based on the foregoing, Defendant has established the absence of a genuine issue of material fact with respect to the claims against him.  *See Celotex Corp*., 477 U.S. at 323. Having filed no opposition, Plaintiff has failed to identify with reasonable particularity any evidence that precludes summary judgment.  *See Keenan*, 91 F.3d at 1279.  Accordingly, Defendant is entitled to summary judgment.  *Id.*; *see Celotex Corp*., 477 U.S. at 323.

### CONCLUSION

For the reasons stated above, Defendant I. Perez-Pantoja's motion for summary judgment is **GRANTED**.[6]  Dkt. No. 16.  The First and Eighth Amendment claims against him are **DISMISSED** with prejudice.

This order terminates Docket No. 16.

**IT IS SO ORDERED.**

Dated:  _December 22, 2023___

BETH LABSON FREEMAN
United States District Judge

Order Granting MSJ
PRO-SE\BLF\CR.22\04460Chester_grant-msj

---

[6] Because the Court finds no constitutional violation occurred, it is not necessary to reach Defendants' qualified immunity argument.

25

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28